# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DILLARD/MISTER-DILLARD, Minors.

UNPUBLISHED
January 20, 2015

No. 323196
Saginaw Circuit Court
Family Division
LC No. 14-034029-NA

*In re* A. L. WILLIAMS, Minor.

No. 323197
Saginaw Circuit Court
Family Division
LC No. 14-034028-NA

Before: SHAPIRO, P.J., and GLEICHER and RONAYNE KRAUSE, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother appeals as of right the trial court order terminating her parental rights to the minor children AW, AYD, and AAD under MCL 712A.19b(3)(b)(*ii*) (failure to protect sibling from abuse), (3)(g) (failure to provide proper care or custody), and (3)(j) (reasonable likelihood of harm if returned to parent). We affirm.

On February 27, 2014, ED, the brother of AW, AYD, and AAD, was brought by ambulance to Covenant Hospital in Saginaw in a state of cardiac arrest with extensive burns and bruises on his body. ED died a few days later. An examination of AW at the hospital revealed old linear marks, old bruises, and old burns on her body. AW's injuries were consistent with physical abuse. That same day, petitioner obtained an ex parte order to take the children into protective custody.[1]

---

[1] Petitioner was familiar with the family as it had been providing services to the family since September 2013 after being informed that the family was living in a condemned house.

-1-

On February 28, 2014, petitioner filed the initial petition in this case and sought termination of respondent's and the legal fathers'[2] parental rights on initial disposition. The petition alleged that when he died, ED had burns over 49 percent of his body as well as bruising and other injuries. He also had subdural bleeding on his brain and a retroperitoneal hematoma. An autopsy revealed that ED died as a result of blunt force trauma to the head, blunt force trauma to the abdomen, and burns. The injuries observed on ED and which caused his death were consistent with physical abuse. The petition alleged that the children's father physically abused ED by beating him repeatedly over a period of three to four hours on February 26 and 27, 2014, and by putting him in the shower and burning him with hot water. The petition also alleged that respondent was aware of the father's actions. It was further alleged that despite being aware that the father was physically abusing ED and AW, respondent had failed to protect the children from the abuse. Additionally, the petition alleged that respondent initially lied to authorities regarding the cause of ED's injuries and that she was incarcerated with a pending charge of first-degree child abuse and, therefore, unable to provide proper care and custody for the children.[3] After respondent waived proofs and demanded a trial, the trial court authorized the petition and the children remained in their foster-care placements.

A joint adjudication trial and termination hearing commenced on July 21, 2014. After taking jurisdiction over the children, the court found that petitioner had proven by clear and convincing evidence that statutory grounds for termination existed under MCL 712A.19b(3)(b)(*ii*), (3)(g), and (3)(j). The court also found that termination of respondent's parental rights was in the best interests of the children. On appeal, respondent challenges both determinations.[4]

In order to terminate respondent's parental rights, the trial court had to find that at least one of the statutory grounds for termination under MCL 712A.19b(3) had been established by clear and convincing evidence. *In re Trejo*, 462 Mich at 355. MCL 712A.19b(3)(b)(*ii*) provides:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> * * *

---

[2] Termination of the legal fathers' parental rights is not at issue in this appeal.

[3] Michigan's Offender Tracking Information System database reveals that, as a result of ED's death, respondent pleaded nolo contendere to second-degree child abuse, MCL 750.136b(3), and ED's father pleaded nolo contendere to second-degree murder, MCL 750.317.

[4] We review the trial court's factual findings that a ground for termination has been established and their termination is the in the children's best interests for clear error. MCR 3.977(K); *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re Mason*, 486 Mich 142, 152; 7782 NW2d 747 (2010).

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

* * *

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

MCL 712A.19b(3)(b)(*ii*) is intended to address a parent who, while not the abuser, failed to protect a child from the other parent or non-parent adult who is an abuser. The record evidence demonstrates that respondent failed to protect ED from harm despite knowing that the father was whipping the child for three to four hours. She was aware that the father's beatings were excessive and that, in her own words, he "did not know when to stop." Despite her awareness that something was not right with ED after the first round of beatings, respondent did not try to interject or put a stop to the beatings.

When the beatings of ED resumed the second day, respondent again did nothing to intervene. Despite ED being unconscious and not moving, respondent did not prevent father from putting ED in the shower and spraying him with hot water. She did not call for medical assistance as the child remained unresponsive and unconscious after being removed from the shower. Respondent remained silent as the father lied to the authorities about an injury that occurred to ED's lip the week before the beatings, and initially lied to authorities about the child's injuries. Although respondent argued that she lived in fear of respondent, the record reveals that respondent had contact with Child Protective Services on eight occasions in person or by phone outside the presence of the father and never expressed any concern about physical abuse of the children and denied domestic violence between herself and the father. Respondent had the opportunity to take the children and leave the house but failed to do so and failed to put a stop to the abuse. Given respondent's knowledge of the father's physical abuse of the children and failure to prevent it, we cannot conclude that the trial court erred by finding a statutory ground for termination under MCL 712A.19b(3)(b)(*ii*).[5]

Respondent next argues that the trial court should have considered the condition of battered woman syndrome as an explanation for her lack of intervention in the physical abuse of the children. In the trial court, respondent did not request the admission or such testimony, rendering this issue unpreserved and limiting our review to plain error affecting substantial rights. *In re Hildebrant,* 216 Mich App 384, 389; 548 NW2d 715 (1996).

Respondent has offered no authority to suggest that battered woman syndrome is relevant in determining whether the statutory grounds for termination were established by clear and

---

[5] Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court reached its decision. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

convincing evidence.[6]  While evidence of battered woman syndrome might be admissible to excuse or mitigate a criminal defendant's culpability, respondent has not shown that it would be relevant in determining whether the statutory grounds for termination here were established by clear and convincing evidence.  Section 19b(3)(b)(*ii*) asks a court to consider whether the parent who had the opportunity to prevent the physical injury failed to do so—it does not speak of any mitigating circumstances.  Section 19b(3)(g) provides for termination where "[t]he parent, *without regard to intent*, fails to provide proper care or custody . . . ." (Emphasis added.)  And § 19b(3)(j) provides for termination where "[t]here is a reasonable likelihood based on the *conduct or capacity* of the child's parent, that the child will be harmed . . . ." (Emphasis added.)  Thus, termination is warranted under these subsections regardless of whether the respondent's parental deficiencies arise from intentional or culpable behavior.  Therefore, even if battered woman syndrome could explain respondent's behavior, it does not operate as a defense to the statutory grounds for termination.  For these reasons, respondent has failed to establish a plain error relating to the relevance of battered woman syndrome.

Finally, respondent argues that it was not in the best interests of the children to terminate her parental rights.  In considering whether termination is in a child's best interests, "the court may consider a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts,* 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted).

The record contains sufficient evidence to support the trial court's conclusion that termination of respondent's parental rights was in the children's best interests.  The family was provided with services up until the time of respondent's incarceration.  The trial court found even if respondent were to be released from her incarceration immediately, it would have very serious concerns about the well-being of the children with unsupervised parenting time.[7]  The court also found that even if the children were to be placed at some time in the care of family members, respondent would be forbidden from having any contact with the children.  The record shows that the children were thriving in foster care and AW's night terrors were subsiding.  The evidence established that the children did not have a significant bond with respondent and we

---

[6] In *People v Christel*, 449 Mich 578, 589; 537 NW2d 194 (1995), our Supreme Court indicated that battered woman syndrome testimony has been used in two different contexts in criminal cases, one involving the use of such testimony to help evaluate the credibility of a victim or complainant, which matter *Christel* addressed, and one involving battered woman syndrome offered by a defendant to support a self-defense claim.  The Court observed that in most cases the syndrome is offered by the defendant in a case of homicide in which the defendant is claiming self-defense.  The Court stated that "[a]lthough we do not express approval or disapproval of this use, we note that the Court of Appeals recently recognized that a majority of jurisdictions favor the admissibility of expert testimony on the issue of battered woman syndrome when offered as a means of self-defense." *Id*.

[7] Michigan's Offender Tracking Information System reveals that respondent's earliest release date from prison is November 30, 2018.

agree with the trial court that the children need to be in an environment where they are safe, nurtured, and their needs are being met.[8]

In sum, the minor children's need for permanence and stability and the advantageous foster-care placement weighed in favor of termination. Therefore, the trial court did not clearly err in finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause

---

[8] During the pendency of these proceedings, the children were not placed with relatives, rendering *Mason*, 486 Mich 142, and *Olive/Metts*, 297 Mich App at 43, inapplicable to this case.